STATE OF NORTH CAROLINA ON RELATION OF N. A. COOPER v.
T. F. CRISCO.

(Filed 2 December, 1931.)

1. **Trial D a—Voluntary nonsuit is voluntary abandonment of action by plaintiff, after which he may bring another action within a year.**

Ordinarily when the plaintiff submits to a voluntary nonsuit in a civil action he is unable to prove his case, or refuses or neglects to proceed to the trial of the cause at issue, or leaves the matter undetermined, and in that circumstance he is allowed by statute to bring another action upon the same subject-matter within a year if no statute of limitations has run against the former action before it was commenced, and the cost thereof has been paid, unless the action was brought *in forma pauperis.* C. S., 415.

2. **Quo Warranto B a—Where relator takes voluntary nonsuit he must again obtain permission to sue in order to bring subsequent action.**

Common-law procedure by *quo warranto* and proceedings by information in the nature thereof have been abolished, and the remedy in such matters is under the provisions of our statute, C. S., 869, 871, requiring that permission of the Attorney-General be first obtained and bond filed to save the State harmless from costs, and where the relator has complied with these conditions and takes a voluntary nonsuit and within a year brings another action upon the same subject-matter against the same respondent, but fails to obtain permission to bring the second action or to file bond therefor until the day before judgment is signed, his delay is fatal and the action is properly dismissed, it being necessary that the provisions of the statute be again complied with before the bringing of the second action.

**3. Same—Bond and permission to sue are prerequisite to right to maintain action in the nature of quo warranto.**

> In proceedings under the statute to try title to a public office the interest of the public is involved and is paramount to the rights of the relator, and the consent of the Attorney-General, the filing of the bond, etc., as required by the statute, is a prerequisite to the right of the relator to maintain the action.

APPEAL by plaintiff from a judgment of *Schenck, J.,* rendered 18 June, 1931. From STANLY. Affirmed.

In the election held in November, 1930, the plaintiff and the defendant were candidates for the office of sheriff of Stanly County. The board of county canvassers declared the defendant elected and the plaintiff instituted proceedings to contest the regularity and validity of his election. On 15 December, 1930, the Attorney-General of North Carolina granted the plaintiff leave to institute an action in the Superior Court of Stanly County to determine the rights of the parties with respect to the office, the plaintiff having tendered security in the sum of $500 to indemnify the State against all the costs and expenses that would accrue in consequence of the action. The clerk issued a summons in the cause on 30 December, and on 29 January, 1931, the defendant entered a special appearance before the clerk and moved to dismiss the action for want of proper service. The clerk granted the motion and the plaintiff appealed, but at the February Term of the Superior Court he took a voluntary nonsuit and was taxed with the cost.

Thereafter, on 11 February, the plaintiff caused another summons to be served on the defendant and duly filed his complaint. The defendant filed an answer and at the May Term the court referred the cause to a referee subject to the defendant's exception. The referee notified the parties that he would proceed with the hearing on 26 May. On 25 May the defendant applied to the judge holding the courts of the district for an order to stay proceedings before the referee for the assigned reason that the defendant neglected to apply to the Attorney-General within ninety days after the defendant's induction into office for leave to sue in this action in the name of the State; that he brought his action without leave of the Attorney-General, without filing a bond of indemnity, and without paying the cost in the former suit.

On 9 June, 1931, the plaintiff filed with the Attorney-General a petition to be allowed to proceed with this action, and on the same date tendered a bond in the sum of $1,000 to indemnify the State of North Carolina against any liability on account of costs in this action, and on 17 June, 1931, the leave of the Attorney-General to the said plaintiff, as set out in the record, was granted. Hearing was had upon the re-

straining order theretofore granted on 11 June, 1931, at Wadesboro before the judge, and the ruling and further hearing were continued until 18 June, 1931, before him at Rockingham, in Richmond County.

On the day last named the court vacated the order of reference and dismissed the action. The plaintiff excepted and appealed.

*G. Hobart Morton, G. D. B. Reynolds and Walser & Casey for plaintiff.*

*R. L. Smith & Sons, R. L. Brown, R. L. Brown, Jr., and R. R. Ingram for defendant.*

ADAMS, J. The writ of *quo warranto* and proceedings by information in the nature of *quo warranto* have been abolished and the remedies available at common law under these forms may now be obtained by a civil action; but when a private citizen desires to bring such action in the name of the State he must apply to the Attorney-General for leave and tender satisfactory security to indemnify the State against all costs and expenses which may accrue in consequence of the action. C. S., 869, 871.

After obtaining leave from the Attorney-General the plaintiff instituted his first action against the defendant on 30 December, 1930, and at the term of the Superior Court which convened in February he submitted to a judgment of voluntary nonsuit. He afterwards issued another summons and commenced a second action against the defendant without applying for or obtaining the Attorney-General's permission to sue in the name of the State. In response to the defendant's proposition that the second action could not legally be prosecuted under these circumstances the plaintiff contends that the leave granted him on 15 December, 1930, applied to the second as well as to the first action.

The decision cited in support of this position is *Quelch v. Futch*, 174 N. C., 395. In that case the action was first instituted by Thomas H. Williams, who suffered a nonsuit, and within twelve months J. P. Quelch began another action for the recovery of the land which was in controversy in the former suit. The court held that Quelch could not avail himself of C. S., 415 because he was not the plaintiff in the other action and because it did not appear that Williams was dead and that Quelch was his heir or representative; and further that Quelch was not within the equity and spirit of the statute which is based upon substantial identity of parties, title, and causes of action. The statement that the two actions should be treated as one and that the second was a continuance of the writ in the first has reference, we apprehend, to the identity of the causes of action, because the only question before the court was whether the plaintiff had brought himself within the pro-

visions of C. S., 415 (Revisal, 370), the Court saying that the two suits must be for substantially the same causes.

Nonsuit is the name of a judgment given against the plaintiff when he is unable to prove a case, or when he refuses or neglects to proceed to the trial of a cause at issue and leaves this issue undetermined. It is provided by statute that if an action is commenced within the time prescribed therefor and the plaintiff is nonsuited he may commence a new action within one year after such nonsuit if the costs in the original action have been paid by the plaintiff before the commencement of the new suit, unless the original suit was brought in *forma pauperis.* C. S., 415. The words "new action," "new suit," and "original suit" indicate a difference in the two actions though the causes may be identical. The distinction is observed in decisions referring to the causes of action in the respective suits, to a restatement of the same cause in the latter action, and to "another action," a "second action," the "former action" and a "subsequent action." *Webb v. Hicks,* 125 N. C., 201; *Woodcock v. Bostic,* 128 N. C., 243; *Meekins v. R. R.,* 131 N. C., 1; *Prevatt v. Harrelson,* 132 N. C., 250; *Evans v. Alridge,* 133 N. C., 378; *Hood v. Telegraph Co.,* 135 N. C., 622; *Tussey v. Owen,* 147 N. C., 335; *Lumber Co. v. Harrison,* 148 N. C., 333; *Starling v. Cotton Mills,* 168 N. C., 229; *Hampton v. Spinning Co.,* 198 N. C., 235.

The prosecution bond in the first action was given on condition that it should be void if the plaintiff paid the defendant all costs which the latter recovered from him in that action; and according to the record the bond filed with the Attorney-General was to indemnify the State "in said action."

The cause of action in the first suit may be identical with the cause in the second, but it does not follow that the prosecution bond, the bond of indemnity, or the leave given by the Attorney-General on 15 December, 1930, can avail the defendant in the action last instituted. Our opinion is that they cannot.

The next question is whether the plaintiff can maintain the "new action." When he began it he had not obtained the leave of the Attorney-General to proceed in the name of the State. The summons was issued 11 February; the final judgment was rendered on 18 June; leave to sue was granted on 17 June. Did the plaintiff neglect to comply with the law?

Insisting that he can maintain the action notwithstanding his delay in applying to the Attorney-General, the plaintiff relies in part on *Russell v. Saunders,* 48 N. C., 432, and similar cases, in which it is said that the giving of a prosecution bond is not a condition precedent to the bringing of a suit and hence the bond may be filed after the writ is re-

turned. Such bond is given for the benefit of the adverse party who may waive its execution, *McMillan v. Baker,* 92 N. C., 111; but as pointed out in *Saunders v. Gatling,* 81 N. C., 298, an action in the nature of *quo warranto* is not merely an action to redress the grievance of a private person who claims a right to an office; it is one in which the public has an interest which is paramount to that of private rights.

That the leave of the Attorney-General is necessary is not questioned. C. S., 871; *Mining Co. v. Lumber Co.,* 173 N. C., 593. The case of *Shennonhouse v. Withers,* 121 N. C., 376, suggests an analogy between a suit brought without obtaining the required leave and one brought without giving a prosecution bond. Referring to that case in *Midgett v. Gray,* 158 N. C., 133, *Hoke, J.,* remarked that it must always be made to appear, pending the proceedings, that the leave of the Attorney-General has been given to prosecute the action. In a subsequent report of the same case it was said that in the absence of proof of permission given anterior to issuing the summons the action should be dismissed. 159 N. C., 443.

The case last cited is the only one which designates the specific time when leave should be obtained—*i. e.,* before the institution of the action; but we are advised of no decision in which this Court has approved the practice on which the plaintiff now insists. In *Shennonhouse v. Withers, supra,* consent was obtained before the trial of the action, and in *Midgett v. Gray, supra,* permission to institute the action which is referred to as a condition precedent, "was given in writing as required by law," presumably before the commencement of the action. In North Carolina Practice and Procedure, sec. 970, it is said: "The fact that leave had been obtained should be stated in the complaint." We deem it best to adhere to the decision in *Midgett's case* as reported in 159 N. C., 443, and to hold that the consent of the Attorney-General is a condition precedent to the institution of the action. The plaintiff obtained leave more than four months after the institution of the action and on the day preceding the rendition of the final judgment. His delay was fatal.

The appellant's counsel referred to the irregularity of the final judgment at Chambers dismissing the action but stated on the argument that if the merits of the case were held to be against the plaintiff they would not urge the irregularity. For this reason the question is not considered. The judgment is

Affirmed.